Good morning, Your Honors. May it please the Court, Alex Weingarten on behalf of Appellants. I'd like to reserve, with the Court's permission, three minutes for rebuttal. Is that time right on the clock? Is the time right? That's not right? Yes. No, it is 15 minutes. Oh, it's 15, okay. I don't know why, but it is. I have no suggestion. Okay. I'll try and put that to the record. Don't need to use all your time. Okay, thank you. We're here this morning, Your Honors, because the District Court granted a Rule 12 motion without allowing us the opportunity to amend claims to address any concerns that it had. I would submit that, first and foremost, the Court erred in granting the motion to begin with because we had indeed pled all the requisite elements to establish the claims that are pled in the First Amendment complaint. Well, Judge King gave you the opportunity to amend, and no amendment. You first amended. You filed the First Amendment complaint, and then you were granted leave to amend to file a second amended complaint, and that was in October, and by December, none had been filed, and he issued a second order that provided that any amendment to be timely had to be filed by January 2nd. None was filed. Why isn't that a lawful order under Rule 16, and in order to amend further, you need to show good cause? Well, Your Honor, the circumstances that led to the stipulations and order from Judge King to amend had nothing to do with the substance of the allegations or the merit of the claims being served. That may have been true in October, but when you get around to December, he said any stipulation or motion to amend or to add a party shall be filed by January 2nd, and none was filed. Well, but again, Your Honor, the circumstances here matter. The reason why there was the discussion with Judge King about amending the complaint was because of the negotiations going on between the City of Santa Monica, Montecito Medical, and my client, and whether or not Montecito was going to complete a transaction with my clients to get them out of the building, and the impact that the criminal charges that had been brought by the City bore on all of that. I understand that as to October, but where's any indication in the record that that had anything to do with the judge's ruling in December, his second order, not his first order? It's all part of the same transaction. It's all part of the same circumstance that led from the first order and the second order. The reason why there was a need for a second order is because the process of separating Montecito Medical from all of this took longer than anticipated. We were under the belief that Montecito Medical was going to sign the settlement agreement well before it actually happened. Well, have you told us even now what – it would help me to go back to the merits of the case, but eventually I'd like to know what you would amend, just in some ballpark fashion, what amendments could help this. Well, I don't think amendments are actually required, Your Honor. I think that we actually have stated the requisite elements of the claim. Okay. But if we were required to amend, we could amend more facts. Well, one thing I would like to know, because nobody's quite told me, is what was the relationship between your client and the person who owned the building at the time. I gather you were not a lessee. Your client was not a lessee, but it was a – it had some management role in this parking lot or what? My client – It's not in the complaint or anywhere else. My client was the original developer of the property. I know that. Then they sold the building to Montecito. I know that. Fine. Pursuant – and I believe it is part of the record – and it's actually, I believe, alleged in our complaint. Part of the sale to Montecito Medical had a holdback for the parking garage because of the issues. Meaning what? Meaning there were less sees for the parking garage? Did they have a lease interest in the parking garage? You never say that. No. They had an economic interest in the parking garage. That's what you keep saying. I'd like to know what that economic interest is because it matters to the – I'd like some ballpark notion of what it is. My understanding, Your Honor, is that they did not sell the parking lot. They sold the building. And in order for them to earn out, there was a purchase price agreed to for the entire building, including the parking garage. But because the parking garage did not work properly at the time of the sale, that was held back so that we could try and get it to work. And then there was an earn out, which is where we get the $10 million. Your client owned the mechanisms but had no interest in the land or in the space? I mean, it's relevant, as I understand it, to – critical to the question of whether there's a property interest. You don't know what its interest is. To just say you have an economic interest is not going to do it. Well, to answer the factual question, my understanding is that we owned an economic interest, and I can't be any more specific than that. Well, your complaint is a little bit more specific. Your complaint alleges that you had a contractual, quote, right to manage and receive any and all revenues associated with the facility. This is at the record at 75. That was essentially my understanding. Yes. Nothing else. That is consistently my understanding, yes. And this is a question I have. If we accept that allegation as true as we must, and you had MMAC right to the city withdrawing the appeal and withdrawing the license application, if that was an improper move on their part, why isn't your remedy a breach of contract action against MMAC for interfering with your right to manage? If your position is the right to manage meant you had the exclusive right to seek construction licenses, why isn't that your remedy? Well, so to answer your question, Your Honor, you can't sue a party to a contract for interference with its own contract. So our contract was a breach of contract. You gave me the contractual right to manage, and you did not allow me to manage by you withdrawing the notice of appeal. That's a straight up breach of contract, not an interference. But they're two separate issues, and whether or not a right exists for us to pursue against MMAC is independent of whether or not the city is liable for its actions that frustrated our ability to be able to deliver what MMAC contracted for. But it goes, rises to the level of informing whether or not you have a real viable economic interest that is protected under the Constitution, or is this merely a contractual right? Isn't that a relevant consideration on whether or not you have a good 1983 claim? Well, I think the answer to that question also answers the question from Judge Brisson that you asked earlier, which was to characterize this right because it's so important to whether or not we can maintain a due process claim. The characterization by appellee is that you need to have a real property right. There needs to be a real property interest. They don't explicitly state that, but the way they argue the cases that they argue make it sound like that's the case, and it's not. The case law, I believe, is perfectly clear that it is an economic interest that is sufficient. You can have an interest created by contract, which we have here, and we've cited several authorities, to your honors, that establish that. The right is a bundle of interests. Here, it's a right to earn money. We have specifically identified a large amount of money that we stood to earn had we not suffered the interference from the city, and that is sufficient to state that the city's involvement here is qua the property. It seems extremely strange to me to think that they're – I mean, to step back from the technical question of whether this is a property interest, that the city would have to essentially afford due process to anybody whose economic interest is going to be affected by the way – a permit, for example, or a license with regard to the use of property. That would be an enormous undertaking, and it isn't the law, I don't think. Well, I guess that presupposes, your honor, that there has to be a real property interest at stake here. What we have is a situation where – Well, it queries how that could possibly not be the case given what the due process obligations of the city would be if it weren't limited to some property interest. The city's due process obligation is to afford applicants for permits, in this particular instance, the right to due process. They have acknowledged there's an email from the city. Yes, but the – my understanding of the city's position is it's the owner of the property who applies for the license, not somebody else. And we don't have to deal with, you know, the manager of a bank, if we're going to conclude that the bank – or any physical place. We're not dealing with anybody whose economic interest is being affected. We're dealing – we're saying that the one who needs a license is the person who owns the property. Well, but that gets into this chicken-and-egg thing that relates to the question that Judge Costello had asked about the timing of our amended complaint. What the city did in this instance, as we've alleged, and I believe more than adequately alleged, is they conspired to deprive us of the opportunity. But are you contesting the second point, that if all that hadn't happened and the city had just said, sorry, you're not the owner of the property and the owner of the property isn't appealing this and you don't have – you're not the person that needs the license or that we can – then, therefore, you're not the person that we're going to provide due process for with regard to the license.  I don't believe that that's the law, Your Honor. So your only complaint, then, is that somehow they made this situation happen. Well, no, but to answer the point that you previously raised, I don't think, again, that there needs to be a real property interest and the city is entitled to say that we can do whatever we want to manipulate the process just because you don't own this land. And I would point – But you have this problem. In your complaint, you don't allege a single instance of the city acting differently than they acted in your case by saying, if the property owner doesn't want to pursue it, we withdraw the appeal. You cite no other instance. You allege no other instance despite your class of one type claim, which would call for that, showing that there were others similarly situated, dealt with differently. I don't find anything in your complaint where you allege someone else who was not an owner was allowed to appeal over the objection of the owner. So the first point in response to that, Your Honor, is that we can easily amend to do so, and I believe the law of the circuit is such that we should be afforded the opportunity. The second point would be that, and I appreciate that it's from the Seventh Circuit, but we provide authorities in the Gnoski case, the Swanson case, that talk about situations of this nature and to require more than we've pled as set forth in those cases would elevate form over substance. We have put the city on notice of our allegations. But you have to show facts, right, under ICBAO. You have to show facts. It's not enough to make a conclusory statement. And you haven't shown that you're similarly situated to someone who got a better treatment at the hands of the city. Well, the ICBAO and Tuomaly standards are that we state plausible claims. And so given the allegations that we've made in our complaint, which candidly have more support than you would typically find, in my experience, in cases of this nature, meet that standard. Isn't it an extraordinary proposition to say that the city did me wrong because they did not allow me to appeal when the owner of the property said it didn't want to appeal? And your complaint cites no rule, no practice, no other instance where they acted differently in the case of somebody else. Well, but I don't believe that we're required to point to a specific fact, to point to another specific instance. But one of the problems here is it's almost counterintuitive, unlike the Seventh Circuit cases, where it seems intuitively obvious that nobody else had such a large number of false tickets. Here, what seems intuitively obvious is no one else had a situation like this. In other words, you're not going to find a similarly situated person. Well, but it depends on your definition of what's similarly situated. Are you going to have a situation where the city conspires to deprive someone of their opportunity to appeal a decision that a building inspector makes? So, yes, you probably are not going to find this exact fact pattern, which is why we're here. But you can have other situations where, like in the Prime Healthcare v. Harris case. I mean, the real question is, is there another situation in which somebody violated a license and then ultimately was prosecuted for doing that and ultimately was denied, wasn't able to seek the license because they weren't the ownership of the property? And you'd have to find that circumstance and show that somebody else in that circumstance was allowed to proceed. And it seems to me somewhat unlikely there is such a person. Well, the two points in response to that, and then we've gone over my reserve time as well, are that, one, it's a distinction between the result and the process that I think is important to maintain here. Our complaint, the due process complaint, is based on process, not result. And that distinction makes all the difference. Well, of course. I stopped my hypothetical at the point of having access to the process. Right. So we need a situation where they have not done this. There are other people who have been afforded the opportunity to disagree with the decision from a building inspector, a city officer. Even though they don't own the property and the person who does own the property isn't challenging it. And even if you wrap up the other circumstances, they violated the license before that. So in response to that, I would say, number one, I respectfully disagree that those exact fact patterns are required to be able to make our case. We need to show that there was disparate treatment here in the way that we were denied access to the appellate process where other people wouldn't have been based on animus. I would also reiterate that ownership of the real property is not, in my opinion and my understanding of the appropriate authorities, a requisite element here, that because we have a contract interest and we have an economic interest in the operation of the facility. No, but then you're flowing into the due process question. But as a matter of the equal protection question, if the city's position is that ownership is a prerequisite, then you would have to demonstrate that somebody who didn't own the property was allowed to proceed even though the person who did own the property was withdrawing the application. But the premise of the hypothetical, Your Honor, is that we are strangers to the property when we're not. We have a concrete interest in the operation of this garage. It's not worse than an interloper. Judge? Yeah, just very quickly. There was no judgment in this case, correct? The case was closed. There was no final judgment. Okay. You filed a notice of appeal 14 days after the district court's decision granting the motion to dismiss, correct? Correct. And at no time did you move to amend. Is that correct? That is correct. Okay, thank you. Thank you very much. Good morning, Your Honors. May it please the Court? I'm Mike Allen. I'm counsel for the defendants' appellees, City of Santa Monica. Could you speak into the mic a little bit? Thank you. Sorry, Your Honor. Let me raise this. I want to just highlight a few facts before I get into some of the key arguments of this case. The appellants in this case are parking garage operators, and one of the key facts that's actually alleged in the complaint and is part of the complaint is the fact that they had previously sought and were granted a permit to operate the parking garage, and it was granted to be fully automated. And at the time they got that license, they did own the property. At the time the property was owned, correct, and then it was sold. Right. After the sale of the property, at some point, the garage did not operate as intended and without seeking any permission. I think we know all that. If those are the facts you want to tell us, we know. Okay. Well, what's important here is, and I think what the appellants tend to undermine, is the serious nature of the violations here. The employees of – How is that relevant to the issues before us? Well, what's relevant to the issue, Your Honor, is the fact that there were criminal proceedings with respect to the illegal operation of this garage, which raised several counts under the labor code, including counts exposing employees to repeated violations that create a real and apparent hazard to employees. So the city has a very strong interest in enforcing the code, especially as it pertains to the safety of its citizens. And while the appellants here attempt to minimize the nature of the criminal proceedings by calling it minor violations, we were talking about serious safety issues here, in which the criminal proceedings resulted in an agreement. I still don't understand what any of this has to do with the issues in the case. Well, the reason why I raise this, Your Honor, is there's a number of issues here with respect to the due process and the equal protection claims. But before even that gets reached, there is the issue of heck. Heck be Humphrey. And we raise this in our papers. We raise this below. I know the district court below did not agree with us on that position, but I think it's a position that at least warrants consideration. How does granting relief under 1983 to this plaintiff for substantive due process or equal protection violations do any violence whatsoever to the no contest plea of Nautilus or Miller? Well, and that's what I was going to get to, Your Honor. And the reason why, if the appellants prevail in this lawsuit, it would imply the invalidity of the underlying conviction is that the. . . Aren't no contest pleas, no low pleas treated differently? Well, Your Honor, we cited at least seven cases in our brief, seven of which are within the Ninth Circuit, two which were published by the Ninth Circuit itself, that held that for purposes of heck, there is no distinction between a no contest plea and a guilty plea. Well, I don't understand what. . . Okay, fine. But still, his contention is, okay, the. . . It's now over. The. . . As I understand it, or at least the way I would put it. The criminal case is over. But I was still entitled to get the city to at least listen to me as to why I should get an. . . I've now fixed it and I want a license. What does that have. . . I mean, he's not even seeking a license for the same thing he had before. Well, maybe he is, but he's seeking a license now. The problem before is he didn't have a license. Now, maybe the answer is, well, of course you're not going to get a license. It wasn't safe. But that's not what he's arguing about. He's arguing about his lack of access to the system. Right, well. . . Perspectively. Your Honor, there's a few points. And, in fact, Your Honor actually hit the nail on the head when you were asking one of the questions of counsel, is doesn't there have to be some sort of legitimate claim of entitlement for there to be a due process protection? Can any economic interest be required. . . That's a different problem entirely. Well, and I. . . But it's not. . . It doesn't go to the. . . Now, off the head question is. . . Well, I think it looks like Your Honors want to move on. And I think I just, you know, briefly. . . I was trying to get you to explain the heck issue. Well. . . But. . . They tie in together, Your Honor. And if I have a moment, I'll actually explain how the due process interest does tie into heck. In order for there to be a due process interest that's protected, there are two steps that the Court needs to look at first. One, obviously, what's the interest being protected here? Is it life, liberty? No, of course not. It's alleged property. And the appellants have not cited a single decision, much less a binding decision on this circuit, which has held that a third-party contract that is not an employment contract creates a property interest. But let's assume, for even argument's sake, that the contract was somehow sufficient. What this Court has held in the Adelhe v. O'Brien case, which we cited on page 21 of our answering brief, is that for a property interest to be protected, there has to be a legitimate claim of entitlement. And in that Adelhe case, in that case, very similar to our case, actually, in the sense that what was sought in that case was a license to carry a concealed weapon. And there was a broad criteria that allowed the city in that case whether or not to grant the license. And in that case, Adelhe said, there has to be a legitimate claim of entitlement. In other words, unless you know for a fact that you're entitled to that piece of property, there is no property interest protected. And that's where we go right into our case. Under the Santa Monica Municipal Code, which is part of the record, the Board has a number of different criteria that it can look at in terms of whether or not to grant a license to operate a parking facility. And one of the factors that is specifically indicated under the Municipal Code is safety. In other words, if there's safety issues, that is a proper basis for a city to deny a permit, as in this case. And in great detail, as part of the record in this case, the city explained why the permit, in this case, the license was not being granted. And that is actually found on – sorry, give me one minute here. This is the October letter, the 30-page letter, is it? Correct. Yeah, okay. Page 100 of the year 2011. And this is your heck argument? Well, let me explain how that ties into the heck. He's now moved on to the heck. Okay, all right. Well, let me ask you a question. What should we do with the fact that when the Miller entities filed a construction license application, it wasn't rejected out of hand because they weren't the owner of the property? That's a good question, Your Honor, and I think certainly the city could have flat out rejected the application on that basis, but it didn't. It provided specific reasons why it was not being granted. Perhaps the city just assumed that the parking operator had the good blessing by the building owner to pursue that license. But for whatever reason, the city went ahead and addressed it on its merits. But obviously once the city found out that the building owner didn't have any interest in either the license being sought or the appeal, that's when the ---- Is there anything related to that? Is there a statement somewhere in the municipal code as to limiting the right to apply for these licenses to a property owner? Well, you know ---- Or somebody with a property interest, a lessee interest? I believe under the code in existence at the time at issue in this case, I'm not sure if that was spelled out specifically, but I think it would be implicit. I mean, I could give an example. Apparently it wasn't implicit. They went and they decided it on the merits. They never said who are you. Well, I mean, Your Honor, I think the landlord-tenant example is an example that I think makes some sense here. Imagine a landlord of a building rents out several units, and one of the tenants decides to tear down a wall. And the city finds out about it and orders them, hey, stop tearing down the wall. It's creating some safety issues. You're exposing wiring, whatever it may be. And let's say the tenant then applies to the city for a permit to be able to, you know, tear down that wall. Whether he could do that or not, it seemed to me ---- You see, that's why I was asking whether he was a lessee, because a lessee has a species of a property right, right? And it depends what the lease says. So, for example, if the lease said that he could rebuild the building, the space, then presumably that was part of his property interest. Well, I mean, I think what you're talking about here is, is there a property interest to operate a semi-automated parking facility in an enclosed underground area, which poses safety risks to individuals, which is in violation ---- But you're now spinning over, you know, and maybe that's where you want to be because of the way the city treated this, to an argument that does not depend on his status with regard to the property. It just depends on the discretionary nature of the decision. That's a different line. Well, Your Honor, if there is no protected due process, if there is no due process interest that needs to be protected, well, let me quote Erdelhi, the case that I cited earlier. It says that since the plaintiff in that case did not have a protected property interest in a concealed weapons license, due process did not require that defendants provide due process. In other words, unless there's a protected interest here at issue, there was no requirement that the city, you know, follow certain procedures. Well, fine. I mean, that's really the bottom line here. There was no protected property interest. And because there was no protected property interest ----  Correct. So you're not interested anymore in the fact. But if that's the case, and the fact that the landlord backed out would be irrelevant, and the fact that they didn't allow it to go forward because the landlord backed out might be, at least on equal protection grounds, a problem. Well, I think that's where the ---- you're absolutely correct, Your Honor. I think the fact that the property only pulled out, that's relevant towards the equal protection claim. It goes towards ---- But it supports this claim, the way you're arguing this, because if it didn't matter whether or not the property owner was appealing, then, which was what you seemed to be saying, then maybe we do need to know more and have an amendment to the complaint as to whether other people were not allowed to go forward even though they weren't the property owner. Well, I mean, let me move into the equal protection. And just before I do that, if the owner didn't disavow it, let's say the owner wanted the appeal to go forward, my point, I'm just making, Your Honor, is that it wouldn't have made a difference. I understand that. But the fact is that wasn't the ground that was given. Well ---- In fact, the reason they backed out, they said they wouldn't entertain it anymore, was because the ---- as I understand it, because the property owner had dropped the issue. The license was denied because of the safety issues, which is in page 100. But then they didn't let him appeal. And the appeal stopped because the owner said, hey, we don't have an interest in that. And so if you're telling me that he didn't have to be an owner, or at least there's no basis for saying he did have to be an owner, then he might have something to his equal protection claim. Well, let me go into the equal protection then. I think the equal protection really involves two issues here, Your Honor. The first issue is, one, did plaintiffs proper ---- did the appellants properly allege that they were treated differently than others similarly situated? And if so ---- Well, let's assume they didn't because they didn't identify other people. Okay. But what about an amendment? All right. Well, the amendment I think is futile, Your Honor. And let me explain the issues on the amendment. First of all, Judge Smith, the Solomon case a few years ago, which we cited in the answering brief on page 54, you were on the panel in which the court noted that leave to amend, a district court's decision whether or not to deny leave to amend, is particularly broad, whereas here leave to amend has already been granted at least once, or in this case, twice. Second of all ---- Well, the first amended complaint, was that as of right or was that with leave? Your Honor, I don't believe they sought leave to amend. I think that was just filed. And I believe the second time around, we stipulated to allow the filing of a second amended complaint. So was there any attempt to amend after the ruling on the equal protection ground? There was never ---- Well, the ruling on the equal protection ground was what preceded this appeal. Right. The ruling on the equal protection ground ---- There was no instance in which they knew what the problem was with their first amendment, with the equal protection allegation. Right. And ---- Right. Now, I mean, one thing I think your briefing here exposes is that our case law is a little bit in tension with each itself. Did they make a request to amend the last time? No. No. There was no request to amend. And our case law is kind of, you know, in both places with regard to whether there has to be a request to amend, as I understand it. Right. At least sometimes we say quite emphatically, it doesn't matter, the district court has to give leave to amend. And sometimes we seem to say, well, if there was no request, then it doesn't ---- then that's a waiver essentially. Yeah. I would agree with that, Your Honor. There was no request. I don't plaintiffs try to argue otherwise. But I think the fact of the matter is, is the appellants were given a two-year period in this case in which to allege sufficient claims of equal protection. In those two years, and when I say two years, I'm talking about from the point where they were ordered to cease and desist and were shortly told thereafter that they were not going to be given the permit to the actual date that the district court dismissed the equal protection claim. But as I understand it, their equal protection claim arises from the inability to appeal. Your Honor, I think the inability to appeal, I would say that they would, in that circumstance, they would have to say that there were other individuals who were allowed the ability to appeal. That's right. And it just hasn't gotten clarified. Right. And I think there's the other aspect of the equal protection claim goes to the actual property itself. That is, as Your Honor, a few years ago, stated in the Svatovic v. U.S. Patent and Trademark Office case, a 2013 decision, Class I plaintiffs have to allege an extremely high degree of similarity between themselves and the persons to whom they compare themselves. And in fact, in the Svatovic case, Your Honor cited to the Rustin v. Town Board second-second case. Well, let's suppose they could come up with, and it sounds like maybe they could, somebody else who was not the owner of the property, who was allowed to appeal even if the property owner was not participating, the denial of a license to do something in the building. Okay, Your Honor. Well, I think that's an interesting question, Your Honor, and I'm not sure if that's the way the complaint alleges. I think the complaint is alleging, I mean, it's not entirely clear what the complaint is alleging the equal protection claim is, but it would seem to me that what they're alleging is they were treated somehow differently than other individuals applying for permits. And I think really at the core of that question is if they could find one other individual that applied for a similar parking facility, you know, a semi-automated facility. Why does it have to be a parking facility? Why can't it just be some license relating to the building? Well, you see, and that's where I think that if that were the standard under the equal protection class of one claim, every single administrative decision would be subject to a Federal lawsuit alleging equal protection. Well, I don't understand why. But your time is up, and thank you very much. Thank you very much, Your Honor. To quickly address a few points. I disagree with the premise that the law of the circuit is all over the place with respect to the right to amend when request was not made in the district court. We cited to the Bonanno case, which says that the fact that no request was made to the district court is of no consequence. That was a very old case, but I know we've done it since. I think we do it regularly. I don't know why you haven't come up with more case law, but I suspect I could. But I do think we said the other as well. I'm respectfully not aware of that other authority, Your Honor. My understanding of the law is that we don't need to request it at the district court. It's enough for us to request it here. And the fact that the district court did not explain why we should not be allowed leave to amend is de facto abuse of discretion. I won't go into the criminal prosecution argument other than to say that, as an entirely different thing. It's apples and oranges. And what my client pled to, the no contest plea, had nothing to do with the allegations that are made in this complaint, as established by the fact that the criminal charges were filed in July. I'm sorry, in April. And the appeal. Nautilus pled to operating an unlicensed garage. Right. Nothing to do with safety. It was operating. Without a license. Without a license. The original license had 12 exceptions under the California building code, right? Sounds right, Your Honor. But again, the facts that give rise to our complaint didn't occur until after the criminal charges were filed. Months later. So there is no relation. There's no violence to the criminal process done by this complaint. The last thing I would say, which seems to be the most important point to focus on, is the property interest. And there was a statement by counsel that we have not cited any authority to support the notion that there's a property interest here. And I don't think that's correct. This circuit in Wedges Ledges identified that the manufacturer of a crane game could, in addition to the operators of that game, pursue these claims of this 1983 claims. And so if the manufacturer of the game, not just the operator, could sue because of the deprivation of a license to the operator of that game, that is a significantly more tenuous connection. But the problem you have here is once the owner steps in and says, the owner of the property, I don't want the license, I don't want the appeal, why doesn't that trump the right of somebody who has a contract to manage? And if there's a dispute on that, it's a contract dispute between you and the owner. Mostly because the reason why the owner of the property ended up sending that letter was because they were coerced by the city into doing it, which is all part and parcel of the claims that we're making. They had criminally prosecuted the owner of the building. I mean, that's what's remarkable about this case. I thought you were going to say because the agency didn't treat the lack of, dealt with this person without the owner previously and didn't seem to have any requirement that it be a property owner. That was the third point I was going to make in the process. The first one was what I had just said. The second one was that, as I said before, these are independent claims. We very well might have a claim against the owner of the property for breach of contract, but that doesn't obviate the claim that we have against the city for its actions that precluded us from being able to exercise our due process rights in an attempt to obtain this license. Thank you very much. Thank you for your arguments. The case of Miller v. City of Santa Monica is submitted and we are in recess. Thank you. All rise.
judges: Berzon, N.R. Smith, Castel